All right, let's pick up the next case, In the Interest of D.C., Mr. Wenger. Good morning, Justices. I plead the court daily. Guy comes up here with four pages of notes, he's probably going to get the gavel in mid-sentence, so bear with me, I'll try to be succinct here. At the outset, I want to make one thing clear. Anything in my briefs to the contrary, it appears that the petition for adoption was filed on May 6th, 2013, not May 7th. Let me ask you about a statement in your reply brief, okay? Yes, sir. And I'm quoting you here, quote, having recently reviewed that file, St. Clair County Circuit Court Number 13, A.D. 29, Appellate Counsel for E.B. is convinced that E.B. filed one day before the petition to adopt was filed, based upon the official file stamp date affixed to the petition to adopt, which was May 7th. Let me explain where that comes from. Where did that come from? That's pretty clear. It sounded to me like you were saying you saw the date on the face of the petition. Mr. Justice, I'll tell you what. I had a clear memory of receiving that thing in the mail, and I thought it was stamped the 7th. I called the courthouse as I was drafting my brief to refresh my recollection, make sure I was correct, was told incorrectly, and I'm not pointing fingers, I mean I was told incorrectly that it was filed the 7th. Now, what it turned out to be was the petition to adopt was not entered into the system, as I was told, until May the 7th, the time not specified. So, but this court has taken the official notice. The record contains entries that shows, you know, as far as I don't know what they mean, entering into the system, the record contains entries that show it filed on the 6th. That's correct, and I don't dispute that. Not just the file stamp. I'm talking about class entries. So file stamp says the 6th. There's no question about that. If that's what you're referring to, then I quite agree with you, and I think there's no dispute, no dispute at all in this case that both pleadings were filed on the same day. There's no dispute. There were no time stamps on either one. So, you know, I think it becomes initially a threshold question of a statutory interpretation, really more than a threshold question. Should the courts draw that final line? When you have two pleadings that were both filed on the same day, and according to what's in the record, within an hour of each other, is that something that should be determinative? Should the courts draw that final line and split hairs for essentially simultaneous filings? I mean, Deborah Kopp and I could have run into each other in the elevator, apparently. I mean, that's how close these were. You know, but I think if you don't look at this in a dry intellectual vacuum, I mean, there are surrounding facts and circumstances. And the other major thing that I think is beyond dispute is that the CD, the foster mother, the petitioner in the adoption, let the one-year period expire. It's set forth in the statute for consent to adoption by a specified person. They're limited to one year. And if they don't file that one year, then if we file a motion to void and set aside that consent, then if they haven't filed the petition to adopt, then it's mandatory to set it aside. If it's – if they have filed the petition to adopt, and I think, you know, this is a statutory interpretation case first and last, then I think then it's a matter for the court to decide, you know, whether – in other words, it's discretionary with the court at that point. Now, I can tell you the issue comes down to this. Did the legislature intend that the courts draw that final line when you have one hour apart, let's say, which apparently the record reflects that they were one hour apart, essentially simultaneous, same-day filings, when the intention to avoid the consent is obvious? The – I hate the term final mom or biological mother, but technically that's what EB is. She's the mother of the child. She's present today. She has a very great interest in setting aside this consent. And the reason this case took out as it did, so to speak, is the fact that – and the record reflects this. I mean, the testimony reflects this, is that CD, the foster mother, the petitioner in the petition to adopt, continually reassured the mother, who was then the age of 19, let's say, and then subsequently at least she's 22 at this point, but continually reassured her that she could see the child anytime she wanted. And, in fact, she did. She came over to the foster mother's house. The mother came over to the foster mother's house, ate with the family, interacted with the child, there was overnight visitation maybe three times a week. And this pattern continued even after the consent was signed, well after the consent was signed, right up until the time – and at the same time, the foster mother was telling the biological mother, anytime you want to step up and set aside that consent, I'll back off, you know, and I won't stand in your way, I won't adopt. If you step up and do that. And she told her this again and again and again, and she pulled back. She wouldn't file a petition to adopt if you set that aside. And she was making these assertions right through April, late April of 2013. So, May 6, 2013, when she got wind, presumably, that this was the intention of the mother, to file this motion to set aside the consent, then there's the race to the courthouse. And it was a race to the courthouse. And substantial issues like this should not be determined on a race to the courthouse. Fundamental rights of a parent or child should not depend on who wins the sprint to the courthouse. We don't even do that in Illinois on real estate matters. And I've cited the statute in my trial memo. So let alone vital and important matters affecting parental rights to their children should not be determined by a race to the courthouse. Well, suppose the petition to adopt had been filed a day before the petition to revoke. Well, I think certainly that would be a different situation. Would the court still have discretion? I think they would. I think the way I read the statute as it existed at that time, now it's been amended subsequently, but, you know, the core issue is the same, and I think it's bound to occur in other contexts. I think the court could have said, I'm not going to set aside the consent, in the court's discretion. I think and I contend that the court has a lot less discretion when you're talking about filings an hour apart. More and more we're seeing, you know, e-filings. And I think, you know, I watch technology just progress by leaps and bounds. But I think in very few years, maybe sooner, we're going to have e-filings across the board, and you're going to have these a second apart. You're going to have a nanosecond apart. Did the legislature really intend that these kind of substantial rights should turn on an hour or less when the intention is obvious, the intention of the mother is obvious, to set aside her consent? And the foster mother knew it. The foster mother knew it. And one might read the facts on the record as a deliberate deception, as trying to lull her into a false sense of security. I think that you would certainly be entitled to draw that conclusion from these facts. And she admitted as much. I mean, she admitted making these representations in her testimony. It's in the record. There's no question about it. And this is all corroborated by the mother's testimony. It dovetails perfectly. This is what happened. We know this is what happened. We know these things were filed an hour apart for the sake of argument. It could have been 58 minutes. It could have been 62. I don't know. But something like that. And there's a case that I've cited, Your Honors, in my trial memo, never done against Terrell, but it's essentially a 303 case, but, you know, the judgment was filed. The question is what it was filed for. It's the judgment of the notice of appeal, you know. And they were both, the clerk was busy in there stamping things in. Nobody really knew which was filed first. And, of course, it potentially could have affected the jurisdiction of the appellate tribunal to review the case. And the court said, we don't think that the drafters of Rule 303 intended to draw so fine a line, and that's not the result that was intended. I think there has to be something more than simultaneous same-day filings to comply with this statute and make the court entitled to refuse to void this consent. And, as a matter of fact, let me re-judge Brandon's opinion. He does base the decision on the first-in-time, first-in-right concept. I think that's what he ultimately concludes, and that's the sole basis of his decision. I mean, you've got, it's a deplorable situation, Your Honor. It's a gal who had a child age of 15 who's living on the property. And by the time she's 19 and all this thing has snowballed, she was unrepresented by counsel when she signed this consent. She was obviously under a great deal of emotional strain and duress. And she said as much. She had limited education. She didn't have her GED at that time. And you've got this woman saying, you can see the child any time you want. Just come over any time. You know, and I'm going to dock, and I'll back off if you want to throw the consent out. And then an individual, as you'll see in the record, Antonio Hampton, who at the time was employed by PCFS, he was the individual who witnessed the consent, told EB, the mother, in the court or outside the courtroom, that if she did not sign the consent, she would never see her son again. Well, what would you do? I mean, if you had no education and you lived your whole life in the Metro East and you were inexperienced in life and you were so intimidated and it was about your only son, what would you do? Would you sign the paper and say what the judge asked you, affirm the consent to what the judge asked you and just hope that you could keep seeing your son and things would improve? Or would you refuse to sign at that point, not knowing what the future held, except you probably ordered the representations of this caseworker, whatever he was, who witnessed the consent, that you'd never see your son again unless you signed this paper? You know, I mean, there's reasons why everything happened in this. And this, I think, has to be viewed in the context of the facts that are in the record. As I said, this is not a dry academic dispute. It may boil down to that. It may be a matter of statutory interpretation. But there are substantial, even heartbreaking, legal rights here that are at stake. And I respectfully submit that one-hour difference in filing pleadings should not determine so weighty matters in Illinois law. So you'll have some time. One hour a day is okay or a week? I think the long – let me put it this way, Mr. Justice. The longer time elapses, I think the more clear it is that the other party did not intend to void or set aside – for instance, I mean, this particular case – Two hours? Well, you know, I think – let me give you an example, and maybe that will answer your question. If not, I'll take another run at it. But in this particular case, you know, the – I think, if you'll review the record, the certificate of service says the 7th of May. Now, in fact, the cover letter says the 9th of May. I received it. I'm talking about the petition to die. The cover letter says it was sent out to me the 9th of May, a nearby community, you know, from, I think, Collinsville to Belleville. And I received it the 10th, and my imperial appearance was on the 10th in the adoption. So I don't think either party knew – I'm going to give them the benefit of the doubt. I don't think either party knew the other had filed. I think they were racing to the courthouse to make sure they were trying to get there first, you know, and lock in at consent, which they knew she was about to try and withdraw. So I think if the parties, you know, let's say with mail service, and that's going to get faster with the advent of e-mail and other technologies, but with mail service, a certificate of service, and you receive it in the mail, and you don't act on that, then clearly I think the courts shouldn't protect her. I think then your intention has been made clear. Her intention, you know, EB's intention has been made abundantly clear. She's here today. She wanted to set this thing aside. We've been fighting ever since to set it aside. And that's what we're arguing, that it would be a miscarriage of justice for one hour to make all the difference. The tail wag of the dog is the word. I don't know if that answers your question. I'd be happy to speak further if I may. Anyone have questions? Thank you very much. Thank you, counsel. Mr. Daley. Good morning, Your Honor. Is there any police in court? You may enter. So if I'm to understand correctly, then the issue is winnowed down to they were filed on the same date, and that the petition was filed prior to the motion to revoke. Well, the trial court made that finding. And the question is, is that against the manifest way of the evidence on that finding? And it's not against the manifest way, because I think when you look at it, one of the things that prompted my motion for this court to take additional notice is that it's not a very well-done record at the circuit court level about when the petition was actually filed. But there was testimony here by Sandra Cunningham, who's a juvenile clerk, who testified that she filed the petition to adopt, I believe, prior to 8 or 8 o'clock or something like that. Counsel for the biological mother conceded that he came in about 10 o'clock or so after a court call and filed the revocation. So I think the combination of the two things that we have, of course, is taking additional notice of, sort of shorts off the gap in the record, if you will, combined with Ms. Cunningham's testimony, I think, along with, I believe, counsel sort of has gone in that direction as well today, that the petition to adopt will stop first. So then we have the recent courthouse question, et cetera, et cetera. I think that the resolution of this really comes down to a jurisdictional question. It's when we look at the strictly legal terms. First of all, the directed consent form is an irrevocable consent to a specific adoption. And this is a particular type of directed consent that's done with the DCFS as a guardian in the minority board of the court, which is what the situation we have here, and is directed to a particular person. And the statute and the form itself, which reflects the statute, states it's irrevocable for a year. Upon, after a year, if no petition is filed, then it becomes voidable, voidable. Void and voidable words are going to hear a lot from me today, unfortunately. But it becomes voidable upon the filing of a motion to revoke the consent. So it doesn't automatically become void after a year. It's still a valid document in executing a directed consent. But it can, at that point, be revoked by an individual who agrees to it. The statute says that if the petition to revoke is filed before the petition to adopt, the petition to revoke shall be granted. Correct. But it doesn't say what happens if it's more than a year and the petition to adopt is filed before the petition to revoke. The statute really doesn't cover that. Do you agree with that? It doesn't really say that. But you have to understand and be very careful about the terminology that's also being used. The existence of this document is an irrevocable consent to adopt. So it's a legal document executed by the biological mother directing the consent to adopt. Okay? It doesn't change the character of it after one year, except for the fact that what's been irrevocable is now irrevocable. But it's still a valid executed consent to adopt, which can still be essentially completed, if you will, by the person to whom the consent is directed. Okay? And that's why they use the specific language of voidable, not void. Which is why I began my argument by saying what really comes down to here is something of a jurisdictional question. Well, let me just carry that thought out. Yeah, absolutely. I mean, because the statute does say if it's filed before the petition to revoke, it shall be granted. Correct. Not mandatory. Correct. I mean, does that imply that if it's not filed before the petition to adopt, but it's been more than a year, the court, it's a discretionary matter, it's not mandatory, and it's up to the court? I don't see my personal position. There's not really much out there that talks about this. But my view is that it's not discretionary because it's jurisdictional. And that really refers back to my argument about the character and nature of this. Okay? Like I said, the only singular legal distinction between year one and year one plus one day is irrevocable or irrevocable. But other than that, the character of it doesn't change at all. You believe 12 months void. After 12 months, it's voidable. Irrevocable 12 months, voidable 12 months plus one day. Correct. So for the first year, the biological mom has no power. Void. Legal power. Well, it's irrevocable. So it's valid. And the only thing that's going on is whether or not the direct consent of the individual files it. Now. Let me just again. Do you agree, though, it does not appear that the trial court exercised any discretion. It does appear that the trial court strictly treated it as whoever files first wins. I think that's how the court ultimately ruled. So there was an argument made. The state's in sort of an interesting position here. It's really between the mom who wants to adopt and the biological mother. But because the child's a board of the court, the state's also a party to that extent. So I'm sort of here in a best interest kind of capacity. And I think that what happened, if you look at the record below, is there was a pretty extensive argument made by counsel for the adopting mother about whether the court should exercise discretion. I guess I don't personally agree with that. Because I see it as a legal document which wants the, as I get to my jurisdictional point, wants the person to whom the consent is directed, files the petition to adopt. That vests the circuit court with personal and subject matter jurisdiction on that adoption petition, which removes essentially everything and anything else that's going on in this case. It's no different than if she had come in on day 11, month and 30 of the day and filed it. That's what happens. And once the court attaches, then it becomes an adoption matter. It doesn't mean that it doesn't change what can happen after that. It's just a matter of what's the legal effect of the revocation, the ability to revoke, and the act of filing the petition to adopt. So I agree with what you're saying, Justice Stewart, but I do think that the absence of language doesn't necessarily mean much. Because it is a legal document which, if you look at the four corners of it, states specifically I am consenting to so-and-so to file a petition to adopt in this case. And that hasn't changed at all from the time that this was executed to the time that she came in and filed that petition to adopt. And I think that when we look at it from a jurisdictional standpoint, it sort of takes away the notion of, well, the race in the courthouse and all this. Because I think this court's question is insinuating to some degree exactly where do you draw the line if the race is okay or not okay. In a way, by drafting the statute this way, you've almost invited a race after a year goes by. The statute's been amended since then. All that language is gone, essentially. It's almost permanently irrelevant. That's not the point. I mean, it is what it is. This is a legal document, which everyone agrees with at the time. This has been executed between the mother and the state. And so any evidence, your view would be any evidence about discussions about I'm not going to file a petition to adopt, all that would be irrelevant. It would be completely irrelevant. All right. It would be completely irrelevant unless for some reason that document was either challenged as essentially not a legal instrument because of some fraud or inducement, things of that nature. It would be some intentional fraud. Exactly. No, there's been no allegation or hearing or anything of that nature. The character of the document itself, everything we're hearing here is really all sort of extraneous information that if it were to be used in that fashion, that's the way it should have proceeded, you know, therefrom at the circuit court level. But that's not what we have here. That's what sort of contradicts the law kind of propositions that you're looking at. And I don't want to get into that because it complicates the issue. It doesn't need to be complicated because it's not pertinent. I mean, essentially the only pertinent questions are did they file first? Was it revoked? It wasn't revoked because they did file first and attach the circuit court's jurisdiction to the petition. And at that point it becomes an adoption as this court's already seen in the file that's sent out to the justices. And I believe that the court should affirm that. Thank you, counsel. Thank you very much. Any rebuttal? Yes, Your Honor. Just briefly, I don't need to suggest that I'm stipulating that they filed first. That was the court's finding. And there's evidence in the record that they filed first. Specifically, I think the only evidence in the record that they filed first, that the petition adopters filed first, was the testimony of Deputy Clerk Sandy Cunningham. And Sandy Cunningham, who works with Judge Brandon and signed to him, got up and testified briefly, as you've read the record, that she remembered that the petition adopters filed at 9 a.m. She didn't give an date. She didn't give any surrounding circumstance of why this should be so clear in her mind every seven weeks. And one hardly knows how many filings intervened and what other duties she had to perform. But she remembered 9 o'clock, and so she said 9 o'clock. I think you're entitled to draw that testimony into question to a certain degree, particularly when we're talking about an hour, because I represented as an officer of the court that I filed mine approximately 10 a.m. after rushing back from Madison County to get the job done. File it personally. Now, who filed first? Heaven only knows. But what I'm stipulating is that both pleadings were filed on the 6th of May, 2013. Now, as far as pointing to the word, counsel points to the word irrevocable, and that form of consent that's set forth in the statute doesn't exist at that time. But irrevocable doesn't necessarily mean that it's not voyeable, and it can be voided. And that was the thrust of our motion. So, I mean, permanent is not necessarily permanent in this particular case. It has to be specified individually, have it adopted within a year. This statute was amended and then re-amended, I think, over the years because I suggested to you that it was problematic, and the case after case addressed this kind of thing when these misunderstandings and misfires occurred in the law and in cases that came down. The legislative intent, I think, is well expressed in that they intended that this adoption petition by a specified person should be filed within one year. Now, it's an open question, as I read the statute as it existed in November of 2011, as to what happens then. If the petition, in other words, if the petition to adopt is filed second, is filed after the motion to void and set aside the consent, then the word shall is used. We all know what the word shall means in statutory instruction and interpretation. It's mandatory. And Mr. Stewart, you pointed that out, I believe. But how voidable is it if the motion to void is denied? I mean, it's got to be voidable. It makes no sense otherwise. So why didn't they put in it shall not be, it shall be permanent and not voidable, you know, after that one year or as soon as the petition to adopt is filed? It could have been expressed in innumerable ways, but they left it open. I contend there's an ambiguity there. But the way I think it resolved is the court has discretion, has the power to void the consent, even after the one year when a petition to adopt is filed, even if it's filed an hour before. But, you know, as far as this who filed first, I think it's a threshold question in a sense of the manifest weight question. I mean, look at the Baby Richard case. I mean, you know, there's a threshold issue in this case in statutory construction and interpretation. As I say, the courts could have said shall not after the adoption petition is filed. They did not say that. Likewise, I don't think it's a jurisdictional issue at all. I mean, I'm not arguing that the courts, the single-penny cert court didn't have and doesn't have jurisdiction over the adoption. It's just that if the consent is voided and set aside, they've got no consent. So they're either going to have to get one or they're going to have to prove her unfit. And certainly that can be done in an appropriate case. So we're not fighting over jurisdictional issues here. I think we're talking about statutory construction, and I think the statute after the one year expires and no adoption petition is filed kind of leaves a great big open gap there as to what happens next. And I certainly don't think the drafter's intent of what should happen next is if the two pleadings are filed in our apartment and the mother manifests an obvious intent to set aside the consent that her desires, her rights should be thwarted. Thank you. Thank you, counsel. We will take this case under advisement. And let's next take up